**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.                                          **CRIMINAL ACTION NO. 3:13-CR-53
(JUDGE GROH)**

**TIMOTHY PAUL STEWART,**

    Defendant.

**ORDER CONFIRMING PRONOUNCED ORDER OF THE COURT GRANTING
UNITED STATES' MOTION TO VOID PLEA AGREEMENT AND DENYING
DEFENDANT'S MOTION FOR SPECIFIC PERFORMANCE**

**I. Introduction**

On January 23, 2014, the parties in the above-styled criminal case appeared before the Court for a hearing on the United States' Motion to Void the Plea Agreement and the Defendant's Motion for Specific Performance. The United States was present by Assistant United States Attorney Jarod J. Douglas. Defendant Timothy Paul Stewart was present in person and by counsel Nicholas J. Compton. Upon consideration of the motions, response, testimony, evidence, and arguments of counsel, the Court found by a preponderance of the evidence Defendant Stewart materially breached the plea agreement. Therefore, the Court **GRANTED** the United States' Motion to Void Plea Agreement and **DENIED** Defendant's Motion for Specific Performance.

**II. Background**

On November 14, 2013, Defendant Stewart was named in three counts of an

Information.  In the first count, Defendant was charged with participating in a conspiracy to distribute narcotics in violation of 21 U.S.C. § 841(b)(1)(C) and 21 U.S.C. § 846.  In the second count, Defendant was charged with a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  In the third count, Defendant was charged with possessing animals for participation in an animal fighting venture in violation of 7 U.S.C. § 2156(b) and 18 U.S.C. § 49.

On November 11, 2013, Defendant signed a plea agreement with the United States.  In Paragraph Four, the parties agreed to "a combined sentence of imprisonment of one-hundred and forty-four (144) months."  Importantly, Paragraph 6 provided:

> Mr. Stewart will be <u>completely forthright and truthful</u> with federal and state officials in the Northern District of West Virginia and elsewhere with regard to <u>all inquiries</u> made of him and will give signed, sworn statements and grand jury and trial testimony relative thereto.  Mr. Stewart will agree to submit to a polygraph examination if requested to do so by the United States Attorney's Office for the Northern District of West Virginia.

Finally, Paragraph 10 stated:

> If, <u>in the opinion of the United States</u>, Mr. Stewart . . . fails to cooperate as promised, fails to make a truthful debriefing, . . . or violates any other provision of the Plea Agreement, then the United States will not be bound to make the foregoing recommendations and will have the right to revoke this agreement.

(emphasis added).

On December 9, 2013, Defendant appeared before United States Magistrate Judge James E. Seibert and pled guilty to all three counts of the Information in 3:13-CR-53, pursuant to the plea agreement outlined in part above.  On January 10, 2014, the case agent, Trooper Corporal O'Dell, debriefed Defendant at the Eastern Regional Jail

in the presence of his counsel. One of the topics of the debriefing was the involvement of Shannon Broadwater, Stewart's girlfriend, in the drug conspiracy. Stewart debriefed that Broadwater had absolutely no knowledge of his drug dealing, and consequently she did not aid and abet his drug dealing. Subsequently, the United States filed its Motion to Void the Plea Agreement.

### III. Analysis

A plea agreement between a defendant and the United States is guided by basic contractual principles, "and each party should receive the benefit of its bargain." United States v. Ringling, 988 F.2d 504, 506 (4th Cir. 1993). However, the Court analyzes a breach of a plea agreement with greater scrutiny than in a commercial contract because a defendant's fundamental and constitutional rights are implicated when he is induced to plead guilty by reason of a plea agreement. Id. To void the plea agreement, there must be a material breach. United States v. Embree, 262 F. App'x 499, 507 (4th Cir. 2008). In reviewing a plea agreement, if the language of the agreement is clear and unambiguous, it should be enforced as written. Embree, 262 F. App'x at 504 (citing United States v. Harvey, 791 F.2d 294, 301 (4th Cir. 1986)). Any ambiguities in the agreement are construed against the United States and in favor of the defendant. Id.

In this case, the Court found that the key terms of the plea agreement are "completely forthright and truthful" and "with regard to all inquiries made of him." The use of the word "all" is plain–it means all.[1] See United States v. Mosby, Criminal Action

---

[1] If Defendant's understanding of the term "all" or "completely" is different from that of the United States' understanding, then there was no meeting of the minds. See United States v. Harvey, 791 F.2d 294, 300 (4th Cir. 1986) (holding that a court interprets plea agreements based on general contract principles); United States v. Hagen, No. 3:08-CR-

No. 5:04-CR-20-03 (Stamp) (N.D.W. Va. Dec. 8, 2004) (holding the defendant could not refuse to answer any question because "all inquiries" means exactly that, *all* inquiries). Therefore, Defendant had an obligation to answer all inquiries made of him truthfully, including questions regarding Broadwater's involvement in the drug conspiracy charged in Count One of the Information. Defendant cannot limit the scope of inquiry merely to crimes he committed. Indeed, questioning Defendant about the drug conspiracy and his co-conspirators as charged in Count One of the Information was an anticipated line of questioning as the Information charged that Defendant knowingly conspired with "other persons known to the United States Attorney." Broadwater was a conspirator known to the United States Attorney because she was charged with participating in the drug conspiracy in Criminal Action No. 3:13-CR-50. Additionally, the use of the word "completely" is plain. Therefore, although Defendant may have been truthful in his debriefing regarding Count 2 and Count 3, it does not mitigate Defendant's failure to be completely forthright and truthful with regards to Count 1.

Next, the Court found by a preponderance of the evidence that Defendant Stewart materially breached the terms of the plea agreement. The Court found that the United States presented sufficient evidence to show by a preponderance of the evidence that Defendant materially breached the plea agreement when he failed to give a truthful debriefing by misrepresenting Broadwater's involvement in the drug conspiracy. Embree, 262 F. App'x at 508 (finding the defendant materially breached the

---

93-2-BR, 2008 WL 5392092, *2 (W.D.N.C. Dec. 19, 2008) (holding a "meeting of the minds" is essential to contract formation) (citation omitted). Therefore, without a meeting of the minds, no plea agreement was formed.

4

plea agreement by giving false information regarding the extent of his involvement in the conspiracy); United States v. Lyons, 205 F. App'x 120 (4th Cir. 2006) (holding that where defendant was not initially truthful with law enforcement concerning information on drug deals and failed to "cooperate" in accordance with the terms of the plea, the government did not breach the agreement by failing to move for a 50% 5K1.1 departure); United States v. Snow, 234 F.3d 187, 189, (4th Cir. 2000) (stating that the party alleging "breach of a plea agreement bears the burden of establishing that breach by a preponderance of the evidence.").

In support of its ruling, the Court found the following facts based on the testimony of the case agent, Corporal O'Dell of the West Virginia State Police and member of the Potomac Highlands Task Force. Corporal O'Dell investigated Stewart and Broadwater with the assistance of a confidential informant ("CI"). The CI, at the direction of Corporal O'Dell, had several e-mail communications with Broadwater to arrange certain drug transactions.

On October 18, 2012, Broadwater, through e-mail communications with the CI, arranged for a drug transaction between Stewart and the CI that occurred later that day. In that e-mail exchange, Broadwater and the CI used code words to discuss the drug transaction. The CI asked to meet Stewart around 5:00 or 5:30 to get "5 CDs" from Stewart. Broadwater responded that they had "football practice at that time so he will want 2 meet you elsewhere I'm sure. I'll give him a call." The CI responded, "Ask him I can come up before then like 4:30." Broadwater then said, "He only has 3. You could come up at 4:00 or meet him in Keyser @ 4:30." The CI replied, "Tell him I meet him at Martins at 430, is that good?" Broadwater wrote, "That is fine."

Later that day, at approximately 4:44 p.m. at the Martins Shopping Center in Keyser, West Virginia, a drug transaction occurred between Stewart and the CI. The CI obtained three grams of cocaine base–not three compact discs. Additionally, if Stewart and the CI were merely exchanging compact discs, then it would have been presumably fine to meet at football practice. Instead, Broadwater made clear that the transaction had to be somewhere else. Therefore, the Court found that Broadwater and the CI were discussing a drug transaction and using the word "CDs" as a code word for drugs.

On November 1, 2012, the CI, at the direction of Corporal O'Dell, again initiated e-mail exchanges with Broadwater to purchase drugs from Stewart. As a result of those e-mail exchanges, the CI made another controlled buy from Stewart.

On October 18, 2013, Corporal O'Dell executed a search warrant at the residence of Stewart and Broadwater in Piedmont, West Virginia. In the master bedroom shared by Stewart and Broadwater, Corporal O'Dell found firearms and drugs, including cocaine base. The search also revealed large amounts of cash, scales, small baggies, notebooks and folders containing information from dog fighting such as statistics regarding the dogs, medical supplies for dogs, books on dog fighting, and a fresh dog hide among other items.

After the Court found by a preponderance of the evidence that Defendant materially breached the terms of the plea agreement, the Court also noted that Paragraph 10 of the Plea Agreement stated that the United States must simply present sufficient evidence to show that *in their opinion* Defendant failed to make a truthful debriefing. In the plea agreement, the parties agreed that "the Government retained the sole discretion to determine whether [Defendant] had been fully truthful and forthright."

See United States v. Stroupe, 200 F. App'x 178, 179 (4th Cir. 2006) (finding the United States acted within its discretion in determining that the defendant was not compliance with the terms of his plea agreement by "attempting to limit the scope of questioning" and giving an answer "in the face of evidence plainly contradicting [his] claim"). Therefore, the United States merely had to show that they exercised good faith in determining Stewart did not comply with the terms of his plea agreement. Accordingly, the Court found that the United States could easily satisfy that burden as, in light of the evidence, the United States had a good faith and reasonable belief that Stewart knew of Broadwater's involvement in the drug conspiracy and chose to give false statements regarding her involvement at his debriefing.

After announcing the Court's ruling, Defendant moved to withdraw his plea of guilty, and the Court **GRANTED** Defendant's oral motion. Finally, the United States moved to dismiss the Information, and the Court **GRANTED** the United States' oral motion.

## IV. Conclusion

Accordingly, the Court **GRANTED** United States' Motion to Void the Plea Agreement and **DENIED** Defendant's Motion for Specific Performance of the Plea Agreement. Additionally, the Court **GRANTED** Defendant's oral motion to withdraw his guilty plea and **GRANTED** the United States' oral motion to dismiss the Information in this matter.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: January 27, 2014

_____
GINA M. GROH
UNITED STATES DISTRICT JUDGE